## COMMONWEALTH *vs.* VAL BETTENCOURT.

Bristol. October 5, 2006. - November 7, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Threshold police inquiry. *Controlled Substances. Practice, Criminal,* Argument by prosecutor.

This court, in affirming a Superior Court judge's grant of a criminal defendant's pretrial motion to suppress evidence found by police during a patfrisk following an arrest, declined to consider an argument raised by the Commonwealth for the first time on appeal. [632-634]

INDICTMENT found and returned in the Superior Court Department on December 18, 2002.

A pretrial motion to suppress evidence was heard by *David A. McLaughlin,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Sosman,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jason C. Howard* for the defendant.

*Tara L. Blackman,* Assistant District Attorney, for the Commonwealth.

COWIN, J. On September 9, 2002, the defendant was arrested on outstanding warrants. As he was pat frisked, several small plastic baggies allegedly containing cocaine fell from his clothing. Based on this evidence, the defendant was indicted for trafficking in cocaine, in the amount of fourteen grams or more, see G. L. c. 94C, § 32E (*b*) (1). The defendant's motion to suppress the cocaine found during the patfrisk was allowed by a judge in the Superior Court. A single justice of this court allowed the Commonwealth's application for leave to appeal and referred the matter to the Appeals Court. After the Appeals

Court reversed the decision allowing the motion to suppress, see *Commonwealth* v. *Bettencourt,* 65 Mass. App. Ct. 1107 (2005), an unpublished memorandum and order pursuant to its rule 1:28, we granted the defendant's application for further appellate review. We affirm the decision of the Superior Court.

The judge apparently adopted the testimony of the Commonwealth witnesses, and we summarize that evidence in broad outline. The defendant was a passenger in an automobile that was stopped by the State police for a motor vehicle violation. On appeal, no one contests the propriety of the stop. The driver was eventually arrested, and the troopers turned their attention to the defendant to determine whether he had a driver's license and could drive the car in order to avoid a tow. They explained this situation to the defendant and asked whether he had a license. He replied that he "didn't have" any identification or that he "didn't have one on him."[1] The trooper then asked his name and date of birth. The critical event is the further questioning of the defendant regarding his name and date of birth after the police became aware that he had no license. He eventually provided his name and date of birth.

In a record check, the police learned that there were outstanding warrants for the defendant, and they placed him under arrest. During a patfrisk of the defendant, plastic baggies were found that allegedly contained cocaine. As stated, the defendant later moved to suppress the alleged cocaine.

In the Superior Court, the Commonwealth sought to justify the inquiry regarding the defendant's name as part of an investigative process ("a justifiable investigation [with] a reasonable basis for that investigation to proceed"). There was no indication, however, of the purpose of that investigation; no evidence of any articulable, reasonable basis for an investigation, see *Commonwealth* v. *Torres,* 424 Mass. 153, 159 (1997); and no ground for believing that the defendant was involved in any criminal activity. The Superior Court judge so found, and he properly allowed the motion to suppress.

---

[1]One of the troopers gave one response on direct examination and another response on cross-examination. To the extent the responses are inconsistent, the judge found that the defendant said "no" to the question whether he had a license. That finding is warranted.

Apparently realizing that the Superior Court decision was unassailable on the ground argued below, the Commonwealth changed its strategy on appeal. The Commonwealth argued to the Appeals Court and to this court that the "community caretaking" function justified the police inquiry regarding the defendant's name and date of birth. The community caretaking function is unrelated to the "detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Commonwealth* v. *Evans*, 436 Mass. 369, 372 (2002), quoting *Cady* v. *Dombrowski*, 413 U.S. 433, 441 (1973). It could, in theory, apply in the present case where, following the arrest of the operator, the vehicle cannot merely be left unattended on the road. Towing could be avoided if a licensed driver were available to remove the car. See *Commonwealth* v. *Caceres*, 413 Mass. 749, 751-752 (1992). Given the ambiguity of the defendant's response regarding a license, the Commonwealth might have made a case that inquiry with respect to the defendant's name was permissible as a means of ascertaining, presumably from the records of the registry of motor vehicles, whether he was in fact authorized to drive. However, the Commonwealth never asserted in the Superior Court, either through questioning at the hearing or in its oral or written argument, that the State troopers were acting pursuant to their community caretaking function.

It has long been our rule that we need not consider an argument that urges reversal of a trial court's ruling when that argument is raised for the first time on appeal. See *Commonwealth* v. *Sheehy*, 412 Mass. 235, 237 n.2 (1992). See also *Commonwealth* v. *Agosto*, 428 Mass. 31, 35 n.6 (1998); *Commonwealth* v. *Garcia*, 409 Mass. 675, 678-679 (1991), and cases cited. Although we occasionally exercise our discretion and consider an issue first raised on appeal, we do so where "the questions presented are of some public importance," and the outcome of the case is not changed by our consideration of them. *Commonwealth* v. *Morrissey*, 422 Mass. 1, 4 n.5 (1996), quoting *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63 (1983). "[I]t is rare for us to consider an argument for reversal of a lower court which is first raised on appeal and is dispositive in favor of the party belatedly raising the issue." *Commonwealth* v. *Morris-*

*sey, supra.*[2] Any occasional exceptions to this rule, see *id.,* are not applicable here.

We do not impose an unworkable or unfair requirement on the Commonwealth. Trial judges cannot be expected to rule, and indeed should not, on theories not presented to them, and defendants cannot respond to arguments not made at the trial level. Our system is premised on appellate review of that which was presented and argued below.[3]

The order allowing the defendant's motion to suppress is affirmed.

*So ordered.*

---

[2] We have considered an issue not raised below when it does not result in reversal of the lower court decision, and the discussion is useful for providing guidance, see *Commonwealth* v. *Agosto,* 428 Mass. 31, 35 n.6 (1998), or to explain a basis for a rule we have adopted, see *Commonwealth* v. *Sheehy,* 412 Mass. 235, 237 & n.2 (1992).

[3] The Commonwealth argued the community caretaking function before the Appeals Court, and that court concluded that the Commonwealth had not waived the issue. The Appeals Court held that there was no waiver because the Commonwealth argued in the Superior Court that there was a "legitimate reason" for the stop. The entire thrust of the Commonwealth's evidence at the motion hearing and its argument in its brief in the Superior Court was based on "reasonable ground for further investigation or precaution." There was no allusion to a noninvestigatory reason.